JOSÉ A. CABRANES, Circuit Judge.
In this case of first impression in the courts of appeals, we are asked to decide whether a federal district court may exercise bankruptcy jurisdiction over generally nonremovable claims brought under the Securities Act of 1933. This is a close question, as it involves a direct conflict between two unambiguous statutes — Section 22(a) of the Securities Act of 1933,[2] which bars removal of individual Securities Act claims, and 28 U.S.C. § 1452(a),[3] which permits removal of claims that are “related to” a bankruptcy case. Because our resolution of this controlling question of law will determine whether scores of pending lawsuits are properly in federal court, we have considered this appeal on an interlocutory basis.
Based on our analysis of the relevant statutes, viewed against the backdrop of the scheme of federal jurisdiction laid out in Title 28 of the United States Code, we hold that the conflict between Section 22(a) of the Securities Act and the bankruptcy removal statute must be resolved in favor of bankruptcy removal. For the reasons stated below, we do not agree with the plaintiffs that Section 22(a) of the Securities Act is more “specific” than the bankruptcy removal provision, nor do we believe that Congress granted the plaintiffs an absolute choice of forum when it amended the Securities Act in 1998. Instead, we resolve the conflict between the statutes by contrasting the bankruptcy removal statute, which contains no exception for claims arising under an Act of Congress that prohibits removal, with the general removal statute, which applies u[e]x-cept as otherwise expressly provided by an Act of Congress.” 28 U.S.C. § 1441(a) (emphasis added). Based on this analysis of the federal jurisdictional scheme as a whole, we conclude that Section 22(a) does not preclude removal of individual actions that are “related to” a bankruptcy case under Section 1452(a).
Background
The following facts are drawn principally from the District Court’s Opinion and *91 Order of March 8, 2003. See In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 312-16 (S.D.N.Y.2003) (“Remand Opinion”). Further detail is provided both in that opinion and in other opinions of the District Court.
On June 25, 2002, WorldCom announced that it had improperly treated $3.8 billion in ordinary costs as capital expenditures. Within two months of that announcement, at least 20 securities class actions had been filed in the United States District Court for the Southern District of New York against numerous defendants, including WorldCom,[4] former WorldCom executive officers, underwriters of WorldCom’s bond offerings (the “Underwriters”), World-Com’s former directors (the “Directors”), WorldCom’s former accountants, and research analysts at a Citigroup unit who issued reports regarding WorldCom (“Citigroup Defendants”).[5] In the meantime, numerous securities class actions were also filed in other federal courts around the country.
On August 15, 2002, the class actions in the Southern District were consolidated under the caption In re WorldCom, Inc. Securities Litigation. On October 8, 2002, the Judicial Panel on Multidistrict Litigation (“MDL Panel”) ordered the class actions filed around the country centralized in the Southern District of New York pursuant to 28 U.S.C. § 1407.[6] As a result of this consolidation order, pretrial proceedings in the consolidated securities class action have gone forward in the Southern District of New York before Judge Denise Cote.
Appellants in the instant case are state and private pension funds that bought WorldCom bonds (“the Bondholders”). Rather than joining a class action against WorldCom and the other defendants, the Bondholders, represented by Milberg Weiss Bershad Hynes & Lerach (“Milberg Weiss”), have brought scores of individual actions in state courts around the country. The Bondholders, unlike the class members, do not assert claims under the Securities Exchange Act of 1934 (“1934 Act”), 15 U.S.C. § 78a et seq.; instead, they bring claims exclusively under the Securities Act of 1933 (“1933 Act” or “the Act”), 15 U.S.C. § 77a et seq. Between July 5, 2002 and October 3, 2003, Milberg Weiss filed at least forty-seven of these individual actions on behalf of over 120 plaintiffs in numerous state courts.
The Bondholders’ litigation strategy is carefully considered. By limiting their complaints to claims under the 1933 Act, the Bondholders seek to take advantage of Section 22(a) of the Act, which states that, with one exception that is not relevant here, “[n]o case arising under this sub-chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.” 15 U.S.C. § 77v(a) (emphasis added). In other words, the Bondholders have crafted their complaints in order to avoid removal of their actions to federal court and consolidation of those actions in a single venue.
*92 Despite crafting their complaints in order to avoid federal jurisdiction, the Bondholders have not succeeded in keeping their claims out of federal court. Rather, with WorldCom in bankruptcy, the Bondholders’ actions have been removed to federal courts around the country under 28 U.S.C. § 1452(a), which permits removal of actions that fall within the federal courts’ bankruptcy jurisdiction as defined by 28 U.S.C. § 1334(b), including actions that are “related to” a bankruptcy. See 28 U.S.C. § 1452(a) (permitting removal of a civil action “to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title”); 28 U.S.C. § 1334(b) (providing that “district courts shall have original but not exclusive jurisdiction of all civil proceedings ... related to cases under title 11”). The Underwriters and the Directors asserted that the actions were “related to” WorldCom’s bankruptcy case by virtue of their contribution, indemnification, and contractual reimbursement rights against WorldCom.[7] Once the Bondholders’ actions were removed to federal court, they were consolidated for pretrial purposes with the class actions already before Judge Cote.
Had the Bondholders asserted claims under the 1934 Act, the removal of their claims to federal court would have been uncontroversial, because claims under the 1934 Act are otherwise removable under the general removal provision of 28 U.S.C. § 1441. See 28 U.S.C. § 1441(a) (“Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed .... ”). However, because the Bondholders only brought expressly nonremovable claims under the 1933 Act, the removal of those claims to federal court provoked a flurry of motions to remand.
For our purposes, the first relevant motion to remand was filed by the New York City Employees Retirement System (“NY-CERS”). While the Bondholders’ actions were being removed, NYCERS filed its own individual action in New York state court alleging violations of both the 1933 Act and New York law. When that action was removed to federal court under Section 1452(a), NYCERS filed a motion to remand. At that point, Judge Cote allowed the Bondholders, including the California Public Employees Retirement System, to intervene in the proceedings on NYCERS’ motion and argue for remand of their individual actions as well.
NYCERS and the Bondholders argued in the District Court that their actions should be remanded to the state courts in which they were filed for two independent reasons: First, they contended that Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a), provides plaintiffs with an absolute choice of forum, and therefore bars removal of their claims to federal court. Second, they argued that, even if Section 22(a) does not bar removal under Section 1452(a), their actions could not properly be removed under Section 1452(a) because those actions are not “related to” the WorldCom bankruptcy. In support of the latter argument, the Bondholders noted that the defendants’ indemnification and contribution claims (1) would not create liability for WorldCom unless a separate action against WorldCom were filed in the bankruptcy court, and (2) were likely to be *93 accorded little or no value in the World-Com reorganization plan then pending before the United States Bankruptcy Court for the Southern District of New York.
On March 3, 2003, Judge Cote rejected these arguments in a comprehensive opinion denying NYCERS’ motion to remand. See Remand Decision, 293 B.R. at 317-330. Judge Cote also ordered individual plaintiffs other than NYCERS to submit supplemental briefing to explain why the March 3, 2003 decision denying remand should not apply to them. On May 5, 2003, after supplemental briefing, Judge Cote adopted the reasoning in the March 3, 2003 decision to deny also the Bondholders’ motion to remand. In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 21031974 (S.D.N.Y. May 05, 2003). Finally, on May 20, 2003, Judge Cote declined to reconsider her remand decisions. In re WorldCom, Inc. Sec. Litig., 294 B.R. 553 (S.D.N.Y.2003). In doing so, Judge Cote rejected the Bondholders’ argument that the April 14, 2003 filing of WorldCom’s Plan of Reorganization with the United States Bankruptcy Court divested the District Court of jurisdiction over the Bondholders’ claims. The Court explained that, even if the Plan of Reorganization would limit the defendants’ ability to recover from the estate on their indemnification and contribution claims, the Court would not be divested of “related to” jurisdiction, because jurisdiction is established based on the facts at the time of removal. See id. at 556-57.
On May 28, 2003, the Bondholders filed a motion pursuant to 28 U.S.C. § 1292(b)[8] to certify the orders denying remand for interlocutory appeal. Notwithstanding the sub judice status of their application for an interlocutory appeal, on August 8, 2003, the Bondholders filed a petition in this Court for a writ of mandamus directing the District Court to vacate its orders denying their motions to remand.[9] By order dated August 11, 2003, Judge Cote deemed the application for an interlocutory appeal pending before her to have been withdrawn without prejudice. In re Worldcom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 21911067 (S.D.N.Y. Aug 11, 2003).
On October 31, 2003, this Court denied the petition for a writ of mandamus on the grounds that “[an] interlocutory appeal pursuant to 28 U.S.C. § 1292(b) remains a possible and adequate avenue for appellate review of the District Court’s orders” and “petitioners’ right to relief in this case is not ‘clear and indisputable.’ ” In re California Public, 79 Fed.Appx. 478, 479 (2d Cir.2003) (quoting In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir.1988)).
*94 After we denied the mandamus petition seeking remand to state court, the Bondholders renewed their motion to certify the orders denying remand for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On December 16, 2003, the District Court granted the motion to certify the May 5 and May 20 Orders insofar as they held that individual Securities Act claims can be removed under 28 U.S.C. § 1452 despite the prohibition against removal contained in Section 22(a). In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 22953644 (S.D.N.Y. Dec.16, 2003). On January 16, 2004, we accepted the interlocutory appeal, and allowed the parties to supplement the briefs they had submitted in support of and in opposition to the mandamus petition.
Notably, although the District Court certified its May 5 and May 20 Orders insofar as they held that stand-alone 1933 Act claims can be removed under 28 U.S.C. § 1452(a), the Court declined to certify the question of whether the individual actions are “related to” the WorldCom bankruptcy. See id. at *5. The Court reasoned that the latter question, in contrast to the former, does not involve a controlling question of law as to which there is substantial ground for difference of opinion. See id. at *5-*6 (applying standard set forth in 28 U.S.C. § 1292(b)). Moreover, in our January 16, 2004 order accepting the interlocutory appeal, we specifically stated that “the district court’s [May 5 and May 20] orders meet the requirements of § 1292(b) insofar as the district court held that Securities Act claims can be removed under 28 U.S.C. § 1452 despite the prohibition against removal contained in Section 22(a) of the Securities Act.”
Well before we accepted the instant appeal, the District Court began to rule on motions to dismiss individual actions filed by the Bondholders. First, on November 21, 2003, the District Court granted a motion to dismiss one Milberg Weiss action based, inter alia, on the statute of limitations applicable to Securities Act claims. In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d 431 (S.D.N.Y.2003). Then, on January 20, 2004, the District Court dismissed with prejudice 31 more individual actions. In re WorldCom, Inc. Sec. Litig., 308 F.Supp.2d 214 (S.D.N.Y.2004). On the same date, the Court also refused to extend the February 20, 2004 deadline by which individual plaintiffs either had to opt out of the class or join the class and withdraw their individual actions. In re Worldcom, Inc. Sec. Litig., No. 02 Civ. 3288, 2004 WL 77694, at *4 (S.D.N.Y. Jan. 20, 2004).
On January 21, 2004, we ordered the parties “to show cause ... whether, in light of continuing proceedings in the district court, including the district court’s dismissal of 31 individual actions brought by Milberg Weiss and its denial of Mil-berg’s request to delay the opt out period of the class action, any order of this court should be issued in aid of our jurisdiction over this appeal.” In response, the Bondholders requested that we (1) stay further proceedings in the cases that were initially brought in state court; (2) vacate the district court’s November 21, 2003 and January 20, 2004 rulings dismissing individual claims; and (3) extend the time for opting out of the class action until after we had decided this appeal. The defendants initially opposed each of these requests.[10] On February 3, 2004, we entered an order directing the District Court “to extend the deadline to opt out of the class action, as well as the accompanying deadline by which plaintiffs who have filed individual *95 actions must move to dismiss their actions voluntarily, until at least 30 days after this Court’s mandate issues.” As a result of our February 3, 2004 order, which did not address the Bondholders’ first two claims for preliminary relief, the Bondholders have not forfeited any right to relief that they would have had in the absence of this appeal.
Discussion
I. The Scope of the Appeal
The District Court granted the Bondholders’ motion to certify one question— namely, whether 1933 Act claims can be removed under Section 1452(a) despite the prohibition against removal contained in Section 22(a). The Court denied the Bondholders’ motion to certify a second question — namely, whether “related to” jurisdiction lies over the Bondholders’ Securities Act claims despite the fact that the defendants’ indemnification and contribution claims against WorldCom were likely to be extinguished in a plan of reorganization and, in any event, could not create liability for WorldCom in the absence of a separate action against WorldCom in the bankruptcy court. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 22953644, at *9 (S.D.N.Y. Dec.16, 2003).
Notwithstanding a district court’s determination that a particular issue fails to meet the requirements of 28 U.S.C. § 1292(b), our Court “may address any issue fairly included within the certified order,” as “it is the order that is appealable, and not the controlling question identified by the district court.” Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (internal quotation marks omitted). Nevertheless, in these circumstances, we will not consider whether the defendants’ potential claims against the estate rendered the Bondholders’ actions “related to” WorldCom’s bankruptcy, because we agree with the District Court that this question is not “a controlling question of law.” 28 U.S.C. § 1292(b).
In its March 3, 2003 Opinion and Order, the District Court found that certain defendants’ contribution claims against WorldCom supported “related to” jurisdiction over the Bondholders’ actions. “Because the effect of contribution claims on the bankruptcy estate is at the very least ‘conceivable,’ ” the District Court reasoned, “the NYCERS action is related to the bankruptcy and subject to the jurisdiction of this Court.” Remand Opinion, 293 B.R. at 321 (applying standard articulated in In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir.1992) (“The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any ‘conceivable effect’ on the bankrupt estate.”)). Having isolated a single basis for jurisdiction — i.e., certain defendants’ contribution claims against the estate — the District Court did not decide whether the Directors’ indemnification claims against the estate or any other potential claims supported “related to” jurisdiction.
Because at least one alternative basis for “related to” jurisdiction may exist — ie., the Directors’ indemnification claims against the estate — we are not convinced that the Bondholders have raised a “controlling question” that should be reviewed on an interlocutory basis. See Int’l Soc. for Krishna Consciousness, Inc. v. Air Canada, 727 F.2d 253, 256 (2d Cir.1984) (interlocutory appeal inappropriate where “there is a multiplicity of factual possibilities which generates a kaleidoscope of hypothetical legal issues”). Indeed, the District Court has specifically noted, among other things, that WoridCom’s payment of the Directors’ attorneys’ fees may *96 support “related to” jurisdiction over the individual actions, notwithstanding the director and officer insurance policies held by WorldCom. See In re WorldCom, Inc. Sec. Litig., 2003 WL 22953644, at *5.
We also are not convinced that the Bondholders have raised a “question of law.” Rather, to the extent the Bondholders argue that there is no “related to” jurisdiction because it has always been evident that the various defendants’ claims against the WorldCom estate would be valued at or near zero in any plan of reorganization, they are challenging the District Court’s largely factual determination that these claims could conceivably affect the estate. By its plain terms, Section 1292(b) may only be used to challenge legal determinations. See Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir.1991).[11]
Because the issue is not properly before us, we intimate no view as to whether the Bondholders’ claims are “related to” WorldCom’s bankruptcy case notwithstanding the tenuous connection between those claims and WorldCom’s reorganization process. Instead, we assume for the purposes of this appeal that the Bondholders’ actions are “related to” the bankruptcy case, and we limit our inquiry to the one question properly before us: whether the District Court erred when it exercised bankruptcy jurisdiction over generally nonremovable claims brought under the Securities Act of 1933.
II. The Statutory Conñict
A. Bankruptcy Removal
The bankruptcy removal provisions, 28 U.S.C. §§ 1452 and 1334, provide that most civil actions related to a bankruptcy case may be removed to federal court. Section 1452(a) states:
A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit’s police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
28 U.S.C. § 1452(a). Jurisdiction under Section 1334 is contingent upon a civil proceeding’s relationship to a bankruptcy case. That Section provides:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
28 U.S.C. § 1334(b) (emphasis added).
These provisions were originally included in the Bankruptcy Reform Act of 1978 (“Reform Act” or “Bankruptcy Code”). See 28 U.S.C. §§ 1471(b), 1478 (repealed). The Senate Report on the Reform Act explains the purpose of the provisions as follows:
This broad grant of jurisdiction will enable the bankruptcy courts ... to dispose of controversies that arise in bankruptcy cases or under the bankruptcy *97 code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court.
S.Rep. No. 95-989, at 158 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5939. Similarly, the House Report explains that the breadth conferred by the new jurisdictional provisions was intended to “greatly diminish the basis for litigation of jurisdictional issues which consumes so much time, money, and energy of the bankruptcy system and of those involved in the administration of debtors’ affairs.” H.R.Rep. No. 95-595, at 46 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6007. In sum, Sections 1452(a) and 1334(b) were intended to decrease the litigation costs to the estate resulting from actions arising in or related to a bankruptcy case.
In 1984, a plurality of the Supreme Court concluded that 28 U.S.C. § 1471(c),[12] which provided for broad jurisdiction in bankruptcy courts, was unconstitutional. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In response, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (1984). Although that statute revamped the relationship between Article III judges and Article I bankruptcy judges, it did not materially alter the jurisdictional scheme set forth in the Reform Act. See 1 Collier on Bankruptcy ¶ 1.02[2] (15th ed. rev. 2003). Thus, Sections 1452(a) and 1334(b), in their current form, can properly be viewed as parts of the Bankruptcy Code.
B. The Securities Act
The key jurisdictional provision of the 1933 Act is found in Section 22(a), which provides for concurrent state and federal jurisdiction over claims under the Act:
The district courts of the United States and United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in [section 16] of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this sub-chapter.
See 15 U.S.C. § 77v(a) (emphasis added). Section 22(a), in addition, specifically bars removal of certain claims brought under the 1933 Act:
Except as provided in [section 16(c) ], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

Id.

Section 16(c) of the Act excepts “class action[s] brought in state court” from the scope of the nonremoval provision and provides that those class actions “shall be removable to the Federal district court for the district in which the action is pending.” 15 U.S.C. § 77p(c) (emphasis added). Moreover, Section 16(b) of the Act preempts a broad category of state law *98 claims insofar as they are asserted in a securities class action:
No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging — (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
15 U.S.C. § 77p(b) (emphasis added).
Section 16 of the 1933 Act, in its current form, was added to the Act in 1998, when Congress enacted the Securities Litigation Uniform Standards Act of 1998 (“SLUSA”), Pub.L. No. 105-353, 112 Stat. 3227 (1998) (codified in part, 15 U.S.C. § 77v(a)). SLUSA was the second major federal securities statute passed in the 1990s. In 1995, Congress had passed the Private Securities Litigation Reform Act of 1995 (“PSLRA”), Pub.L. 104-67,109 Stat. 737 (1995). The PSLRA was intended to curtail “strike suits” — i.e., meritless class actions alleging fraud in the sale of securities. See H.R. Conf. Rep. No. 105-803 (1998). It aimed to curtail these suits by instituting, among other things, heightened pleading requirements for class actions alleging fraud in the sale of securities. See 15 U.S.C. § 78u-4.
SLUSA was enacted after it became evident that the PSLRA had not achieved its purpose. The PSLRA was ineffective in eliminating “strike suits” in large part because class action plaintiffs were able to avoid its strictures by bringing suit in state rather than federal courts. SLUSA, which made federal court the exclusive venue for class actions alleging fraud in the sale of certain securities, closed this loophole in the PSLRA, and expanded federal jurisdiction over class actions. See generally Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir.2001) (detailing the history of PSLRA and SLUSA).
Like the PSLRA, however, SLUSA did not in any way alter Section 22(a)’s bar on the removal of individual Securities Act claims. Accordingly, the statutory conflict between the bankruptcy removal statute and Section 22(a) remains clear: While the bankruptcy removal statute unambiguously states that any civil action brought by a private party in state court (or any court besides the United States Tax Court) may be removed to federal court if the action is related to a bankruptcy case, Section 22(a) of the Act states, in equally unambiguous terms, that individual actions under the Act may not be removed from state court. Because the Bondholders have brought stand-alone individual claims under the Act that are (presumptively) related to a bankruptcy, we must resolve the conflict between the statutes.
III. Case Law
A. The District Court’s Opinion
In a thoughtful and thorough opinion, Judge Cote concluded that the bankruptcy removal statute trumps Section 22(a) of the 1933 Act. See Remand Opinion, 293 B.R. at 328-30. To reach this conclusion, Judge Cote relied principally on several arguments put forward by the defendants.
First, Judge Cote pointed out that the general removal statute, codified at 28 U.S.C. § 1441(a), provides: “Except as otherwise expressly provided by an Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed .... ” Section 1452(a), by contrast, contains just two enumerated exceptions: (1) proceedings be *99 fore the Tax Court and (2) civil actions brought by the government. In Judge Cote’s view, under the principle inclusio unius est exclusio altemis — that to express or include one thing implies the exclusion of the other — the enumerated exceptions in Section 1452(a) must be viewed as exclusive. Remand Opinion, 293 B.R. at 328-29.
Next, Judge Cote explained that “[i]n-terpreting Section 1452 to allow removal for all actions over which there is bankruptcy jurisdiction ... is consistent with the purpose of the Bankruptcy Code”— namely, to preserve assets so that the estate can be reorganized in an efficient manner. Remand Opinion, 293 B.R. at 329 (S.D.N.Y.2003).
Finally, Judge Cote relied on our Court’s decision in Gonsalves v. Amoco Shipping Co., 733 F.2d 1020 (2d Cir.1984). In Gonsalves, an expressly nonremovable Jones Act claim was joined with a claim for unseaworthiness and a maintenance and cure claim. No explicit bar to removal applied to either of the maritime claims, and diversity jurisdiction existed over the maintenance and cure claim. The defendant removed the action as a whole to federal court under 28 U.S.C. § 1441(c). Prior to the enactment of the Judicial Improvements Act of 1990, Pub.L. 101-650, 104 Stat. 5089, § 1441(c) provided that “whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed ....” 28 U.S.C. § 1441(c) (1982).[13]
Although we ultimately held on appeal that the maintenance and cure claim was not sufficiently “separate and independent” of the Jones Act claim to warrant removal of the Jones Act claim under § 1441(c), see Gonsalves, 733 F.2d at 1026, we stated first that if the joined claims were sufficiently independent to be removed under that provision, Section 1445(a), which makes Jones Act claims nonremovable, would not override Section 1441(c). See id. at 1022. In other words, as Judge Cote put it, the Court of Appeals “found that the Jones Act removal bar provided an express exception to removal under Section 1441(a), but did not create an exception from the ‘additional removal jurisdiction’ available under Section 1441(c) for cases that otherwise could not be removed.” 293 B.R. at 329. According to Judge Cote, “a similar analysis would mean that Section 22(a)’s bar to the removal of 1933 Act claims would not prevent an action from being removed to federal court if there was a separate, appropriate basis for the removal.” Id.
B. Other Decisions
Judge Cote was the first district judge to resolve the conflict between the Securities Act and the bankruptcy removal statute in favor of removal. Many district courts to address the issue have reached the opposite conclusion. See Illinois Mun. Ret. Fund v. Citigroup, Inc., No. 03-465-GPM, 2003 U.S. Dist. Lexis 16255, at *6 (S.D.Ill. Sept. 9, 2003); City of Birmingham Ret. & Relief Fund v. Citigroup, Inc., No. CV-03-BE-0994-S, 2003 WL 22697225, at *3 (N.D.Ala. Aug.12, 2003); Tenn. Consol. Ret. Sys. v. Citigroup, Inc., No. 3:03-0128, 2003 WL 22190841, at *4, *100 2003 U.S. Dist. LEXIS 10266, at *10 (M.D.Tenn. May 9, 2003); cf. McRae v. Lykes Bros. Steamship Co., No. 98-3240, 1998 WL 898467, 1998 U.S. Dist. LEXIS 20132 (E.D.La. Dec. 22, 1998) (granting remand to state court because non-removal provision of Jones Act overrides claim of “related to” jurisdiction under §§ 1334 and 1452); Kinder v. Wis. Barge Line, Inc., 69 B.R. 11, 13 (E.D.Mo.1986) (same). In the most extensive of these opinions, Judge William J. Haynes, Jr. of the Middle District of Tennessee reasoned that the conflict between the statutes should be resolved in favor of Section 22(a) because it is more specific than Section 1452(a). See Tenn. Consol., 2003 WL 22190841, at *2-*4, 2003 U.S. Dist. LEXIS 10266, at *7-*11 (citing Bulova Watch Co. v. United States, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961) (stating that “a specific statute controls over a general one without regard to priority of enactment”)). The Court in that case also noted that Section 22(a) was amended as recently as 1998, when Congress enacted SLUSA. Id. at *3, 2003 U.S. Dist. LEXIS 10266, at *8.
Since Judge Cote declined to remand the individual actions in the instant case, two more district judges in the Southern District of New York have resolved the conflict between Section 22(a) and Section 1452(a) in favor of Section 1452(a). See In re Adelphia Communications Corp. Sec. and Derivative Litig., No. 03 MDL 1529, 2003 WL 23018802, at *2 (S.D.N.Y. Dec.23, 2003) (McKenna, J.); In re Global Crossing Ltd. Sec. Litig., No. 02 Civ. 910, 2003 WL 21659360, at *3 (July 15, 2003) (Lynch, J.). In Global Crossing, Judge Lynch explained that, although SLUSA was enacted in 1998 and “ordinarily, the more recently enacted statute will control where it conflicts with a prior law,” id., SLUSA’s narrow purpose was to prevent class action plaintiffs from suing in state courts. Id. Therefore, in Judge Lynch’s view, SLUSA “does not reflect a recent indication of congressional intent regarding the fourteen-year-old conflict between § 1452 and § 22(a).” Id. (internal quotation marks omitted). In Adelphia, Judge McKenna adopted Judge Lynch’s reasoning. See Adelphia, 2003 WL 23018802, at *2.[14]
IV. Analysis
We review a district court’s denial of a motion to remand de novo. Cicio v. Does, 321 F.3d 83, 89 (2d Cir.2003). In reviewing Judge Cote’s denial of the Bondholders’ motions to remand, we are mindful that “the defendant bears the burden of demonstrating the propriety of removal.” Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151 (2d Cir.1994); accord United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994) (“Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.”); cf. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) (directing that removal statutes be given “strict construction”). Based on our analysis of the Securities Act of 1933 and the bankruptcy removal stat *101 ute, we conclude that the defendants have met their burden in the instant case.
A. Statutory Language
Construction of the relevant statutes “must begin with the words of the text.” Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir.2003). Section 1452(a) states that a party may remove “any claim or cause of action in a civil action other than” claims falling within two cited exceptions. 28 U.S.C. § 1452(a) (emphases added). Section 22(a), meanwhile, states that “except as provided in section 16(c), no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.” 15 U.S.C. § 77v(a) (emphases added). The statutes, therefore, contain equally categorical language. While the unambiguous language of the bankruptcy removal statute permits removal of 1933 Act claims that are related to a bankruptcy case, the unambiguous language of the Securities Act forbids removal of such claims.
The direct conflict between the statutes cannot be resolved based on the familiar maxim inclusio unius est exclusio alteri-us. Under that maxim, because Section 1452(a) enumerates the two narrow exceptions that it contemplates, ie., (1) proceedings before the Tax Court, and (2) civil actions brought by the government, these are the only exceptions to removal under the Bankruptcy Code. Under the same maxim, however, the single exception to Section 22(a), ie., “class action[s] brought in any state court,” 15 U.S.C. § 77p(c), should be treated as the only exception to nonremoval under the 1933 Act. In sum, the inclusio unius maxim, to the extent that it is divorced from the broader statutory framework of Sections 1452(a) and 22(a), is of little value in the instant case. Both Section 22(a) and Section 1452(a) contain exceptions that would, in the absence of a direct statutory conflict, be treated as exclusive.
B. Specificity
Despite the direct conflict between the 1933 Act and the bankruptcy removal statute, the Bondholders contend that we can resolve the dispute between the parties without looking beyond the language of these statutes. In particular, the Bondholders claim that Section 22(a) necessarily trumps Section 1452(a) because it is more specific than Section 1452(a). We disagree.
“Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.” Radzanower v. Touche Ross & Co., 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (quoting Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)); see also Greene v. United States, 79 F.3d 1348, 1355 (2d Cir.1996) (“When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.”). In determining whether Section 22(a) is more “specific” than Section 1452(a), Radzanower itself is instructive. At issue in that case was the proper venue for a suit brought under the 1934 Act against a national banking association. Radzanower, 426 U.S. at 149-50, 96 S.Ct. 1989. The venue provision of the 1934 Act, 15 U.S.C. § 78aa, allows suits to be brought in any district where the defendant transacts business or may be found, or where the violation occurred. However, the venue provision of the National Bank *102 Act, 12 U.S.C. § 94,[15] provides that actions against a national banking association “may be had” only in the district where the association is “established.” See Rad-zanower, 426 U.S. at 150, 96 S.Ct. 1989. In concluding that the National Bank Act’s venue provision is more specific than the 1934 Act’s venue provision, the Court reasoned:
When Congress enacted the narrow venue provisions of the National Bank Act, it was focusing on the particularized problems of national banks that might be sued in the state or federal courts. When, 70 years later, Congress enacted the Securities Exchange Act, its focus was on the objective of promoting fair dealing in the securities markets, and it enacted a general venue provision applicable to the broad universe of potential defendants subject to the prohibitions of that Act. Thus, unless a “clear intention otherwise” can be discerned, the principle of statutory construction discussed above counsels that the specific venue provisions of § 94 are applicable to the respondent bank in this case.
Id. at 153-54, 96 S.Ct. 1989.
Having concluded that the venue provision of the National Bank Act is more specific than the venue provision of the 1934 Act, the Supreme Court went on to determine that, when it enacted the 1934 Act, Congress did not express a “clear intention” to repeal the National Bank Act’s venue provision by implication. The Court explained that a general statute will not be construed to repeal a specific statute by implication in the absence of an “irreconcilable conflict” between the statutes. Id. at 155-56, 96 S.Ct. 1989. Because, in the Court’s view, application of § 94 to securities actions against banking associations “will not unduly interfere with the operation of the Securities Exchange Act,” there is no “irreconcilable conflict” between the 1934 Act and the National Bank Act, and the more specific statute controls. Id. at 156, 96 S.Ct. 1989 (internal quotation marks omitted).
Based on the principles of statutory interpretation articulated in Radzanower, we cannot conclude that Section 22(a) is more “specific” than Section 1452(a). First, unlike the National Bank Act’s venue provision, which applies to a defined group of litigants, Section 22(a), like both Section 1452(a) and the 1934 Act’s venue provision, applies to a defined class of claims. Thus, the Supreme Court’s distinction between a statute applicable to a “broad universe of potential defendants” and a statute that protects a “particularized” group of defendants, id. at 153-54, 96 S.Ct. 1989, carries no weight here.
Additionally, the class of claims covered by Section 22(a) is no more specific than the class of claims covered by Section 1452(a). Section 22(a) does not cover only a subset of the claims covered by Section 1452(a). By the same token, Section 1452(a) does not cover only a subset of the claims covered by Section 22(a). Rather, just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not “related to” a bankruptcy.
In that respect, it is instructive to compare Section 1452(a) to the general removal statute, which, “except as otherwise expressly provided by Act of Congress,” permits removal of “any civil action brought in a State court of which the district courts of the United States have original jurisdiction .... ” 28 U.S.C. § 1441(a). Even without the introductory *103 clause in Section 1441(a), Section 22(a) would arguably trump that provision on the ground that Section 22(a) is more specific than Section 1441(a); that is, Section 22(a) applies to only one subset of those actions over which “the district courts of the United States have original jurisdiction,” while Section 1441(a) covers the whole universe of such actions. By contrast, Section 22(a) does not cover only a subset of the universe of claims that are “related to” a bankruptcy case; rather, it applies to numerous claims that are in no way “related to” a bankruptcy, just as Section 1452(a) applies to numerous claims that are not brought under the 1933 Act.
Finally, even if we were to conclude that Section 22(a) covers a more “specific” group of claims than Section 1452(a), Section 22(a) would not necessarily control. The Supreme Court in Radzanoioer indicated that where the application of a specific statute would “unduly interfere” with the operation of a general statute that was enacted subsequent to the specific statute, the more general statute controls. See Radzanower, 426 U.S. at 156, 96 S.Ct. 1989. In Radzanower, however, the Court determined that the National Bank Act’s venue provision would not “unduly interfere” with the operation of the 1934 Act, because (1) the provision “will have no impact whatever upon the vast majority of lawsuits brought under that Act” and (2) “[i]n the tiny fraction of litigation where its effect will be felt, it will •foreclose nobody from invoking the Act’s provisions.” Id.
We are not so sanguine about Section 22(a)’s effect on the system created by the Bankruptcy Code. When Congress enacted Section 1452(a) in 1984, fifty years after it first enacted Section 22(a), “Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.” Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (emphasis added and internal quotation marks omitted). Therefore, Congress crafted Section 1452(a) to allow removal in a broad array of situations. First, unlike Section 1441(a), which authorizes defendants to remove, the bankruptcy removal statute authorizes any “party,” including plaintiffs, to remove. See 28 U.S.C. § 1452(a). Second, because any one “party” can remove under Section 1452(a), removal under that provision, unlike removal under Section 1441(a), does not require the unanimous consent of the defendants. See Creasy v. Coleman Furniture Corp., 763 F.2d 656, 660 (4th Cir.1985). Third, whereas the general removal statute, § 1441(a), contemplates removal only from state court, there is no such limitation in Section 1452(a). See, e.g., Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1572 (Fed.Cir.1995) (holding that removal of an action from the Court of Federal Claims to federal district court was proper under Section 1452(a)). Accordingly, in its every detail, Section 1452(a) is designed to further Congress’s purpose of centralizing bankruptcy litigation in a federal forum. See In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992) (noting “the strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court”); In re Pan Am. Corp., 950 F.2d 839, 845 (2d Cir.1991) (similar).
Were Section 22(a) construed to trump Section 1452(a), Section 22(a) could interfere with the operation of the Bankruptcy Code, especially in large chapter 11 cases. Cf. Celotex, 514 U.S. at 310, 115 S.Ct. 1493 (noting that “related to” jurisdiction may extend more broadly when it concerns a reorganization under Chapter 11 as opposed to a liquidation under Chap *104 ter 7). When a debtor seeks to reorganize, as WorldCom has, its plan of reorganization must resolve all lawfully pending liabilities, and, to do so, the plan must marshal and allocate all of the debtor’s assets. Regardless of whether the defendants’ contribution or indemnification claims in this particular case ultimately had a material impact on WorldCom’s final plan of reorganization, it is apparent that contribution and indemnification claims can, in some circumstances, affect the administration of a bankrupt estate. Cf. In re Enron Corp. Sec., Derivative & “ERISA” Litigation, No. G-02-0299, 2002 WL 32107216, at *7 (S.D.Tex. Aug. 12, 2002) (predicting a “significant impact on Enron’s bankrupt estate should [J.P. Morgan’s] potential claims for indemnity and contribution [against Enron] succeed”). Because, in any given case, the full amount of damages sought under the 1933 Act can be the basis for a claim against the estate, the policy underlying Section 1452(a) applies with full force to claims under the Act. Section 1452(a) dictates that these claims, when they are brought against defendants with contribution rights, should not be subject to conflicting outcomes along with repetitive and time-consuming discovery proceedings in multiple state courts.
In sum, because Section 22(a) does not cover a narrower class of claims than Section 1452(a), it cannot be considered more “specific” than Section 1452(a). Moreover, even if Section 22(a) were more specific than Section 1452(a), Radzanower counsels that, because Section 22(a) could interfere with the operation of the Bankruptcy Code, it would not necessarily control.
C. Rule of Recency
The Bondholders argue further that Section 22(a),- 'which was amended by SLUSA in 1998 trumps Section 1452(a), which was enacted in 1984, because Section 22(a) is the more recently enacted statute. Once again, we disagree.
It is well established that “when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent.” In re Ionosphere Clubs, Inc., 922 F.2d 984, 991 (2d Cir.1990). However, it is also well established that “repeals by implication of jurisdictional statutes ... are disfavored.” Henderson v. INS, 157 F.3d 106, 119 (2d Cir.1998). Based'on the second principle, the mere fact that Section 22(a) was amended in 1998 is not particularly probative.[16] In order to convince us that Section 22(a) trumps Section 1452(a) as a result of SLUSA, the Bondholders would need to show that, when it enacted SLU-SA, Congress intended to give individual plaintiffs an absolute choice of forum for claims brought under the 1933 Act.
The Bondholders cannot make this showing, because nothing in the text or legislative history of SLUSA indicates that Congress intended to alter the jurisdictional scheme applicable to individual actions under the 1933 Act. Indeed, given Congress’s focus in 1998 on expanding federal jurisdiction, “[i]t would be ironic ... to read SLUSA... as implicitly contracting federal jurisdiction by reversing, without comment in either text or legislative history, the bankruptcy removal statute’s effect *105 on the prior removal scheme.” In re Global Crossing, Ltd. Sec. Litig., 2003 WL 21659360, at *3. SLUSA, which merely-expanded federal jurisdiction over class actions, offers no support to the Bondholders.
That is not to say that SLUSA, which left the 1933 Act’s nonremoval provision intact, can be used against the Bondholders. All we conclude here is that, in light of its complete silence in 1998 with respect to individual Securities Act claims that are related to a bankruptcy case, Congress did not alter any preexisting rule when it enacted SLUSA. Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 381-82, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (explaining that Congress’s “comprehensive reexamination and significant amendment” of the Commodities Exchange Act, which left intact a provision of the Act under which courts implied a cause of action, “is itself evidence that Congress affirmatively intended to preserve” that implied cause of action).[17]
D. Statutory Framework
Because Congress did not manifest an intent to alter preexisting law when it amended the 1933 Act in 1998, we cannot resolve the statutory conflict by focusing on SLUSA. Thus, we turn our attention to Section 1452(a). That statute, which was enacted over fifty years after the Securities Act of 1933, does not refer to the 1933 Act. However, unlike the general removal statute, 28 U.S.C. § 1441(a), Section 1452(a) contains no exception for federal claims that are expressly nonremovable under an Act of Congress. Based on this crucial distinction within the federal jurisdiction scheme of Title 28, we conclude that, unlike the general removal statute, Section 1452(a) does not except individual claims brought under the Securities Act.
Section 1441, as we have noted, is the general removal provision of the Judicial Code of 1948, and it is based mainly on an analogous provision in the Judicial Code of 1911. See 16 James William Moore et al., Moore’s Federal Practice § 107 App. 100[2] (3d ed.2002). Section 1441(a) provides that “[ejxcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the District and Division embracing the place where such action is pending.” 28 U.S.C. § 1441(a) (emphasis added). Section 1441(c), in turn, now provides as follows: “Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed .... ” 28 U.S.C. § 1441(c).[18] Thus, except in those *106 instances where Congress has expressly forbidden removal, Section 1441 permits defendants to remove any claim that could be brought in federal court as well as any claim that is joined with a claim premised on federal law.
Like Section 1441(c) but unlike Section 1441(a), Section 1452(a) does not contain an exception for claims arising under an Act of Congress that. otherwise prohibits removal. Rather, § 1452(a) states that “[a] party may remove any claim or cause of action .... ” 28 U.S.C. § 1452(a) (emphasis added). The absence of a such a crucial exception in the language of Section 1452(a) suggests that, in 1978, when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section 22(a) and its analogues to bar removal of “related to” claims. Cf. Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“Where Congress includes particular language in one section of a statute but it omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (internal quotation marks omitted)).
Under the Bondholders’ reading of the relevant statutes, according to which Section 22(a) trumps not only Section 1441(a) but also Section 1452(a), the key words “[ejxcept as otherwise expressly provided by Act of Congress” in Section 1441(a) would be surplusage. In other words, if we concluded that a nonremoval provision such as Section 22(a) prevents removal under both Section 1441(a) and Section 1452(a), notwithstanding the phrase “[e]x-cept as otherwise expressly provided by Act of Congress” in Section 1441(a), that phrase in the general removal statute would serve no apparent purpose.
Statutes should be construed, if possible, to give effect to every clause and word. See e.g., Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); Babbitt v. Sweet Home Chapter of Communities for a Great Or., 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). Although “[s]urplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute,” Lamie v. United States Trustee, — U.S. —, —, 124 S.Ct. 1023, 1031, 157 L.Ed.2d 1024 (2004), there is no benefit whatever to interpreting the introductory clause of Section 1441(a) as surplusage. By contrast, if we give effect to every clause in Section 1441(a), the statutory conflict between Section 1452(a) and Section 22(a) dissolves. In these circumstances, we should avoid an interpretation of Section 1452(a) that renders a key clause of Section 1441(a) unnecessary.
Our decision in Gonsalves, although not directly controlling, supports a reading of Section 1452(a) that gives effect to every clause in Section 1441(a). In Gonsalves, we stated in dicta[19] that the pre-1990 *107 version of 28 U.S.C. § 1441(c), which permitted removal of nonremovable claims that are joined with a removable claim, trumped the provision of the Jones Act forbidding removal of stand-alone Jones Act claims. Gonsalves, 733 F.2d at 1022-28.
As an initial matter, we note that the plaintiff in Gonsalves, unlike the Bondholders, cbose to join removable claims with otherwise nonremovable claims and therefore “accepted the risk of removal.” Id. at 1026. Here, by contrast, by asserting individual claims under the 1933 Act, and wholly eschewing the 1934 Act, the Bondholders manifestly did not assume the risk of removal. Thus, the assumption-of-risk logic that underlay Gonsalves has no application here.
Nevertheless, Gonsalves is instructive insofar as we explained in that case that “there is no indication in the text of Section 1441(c) that Congress intended to con-fíne the meaning of a ‘non-removable’ claim to claims over which a federal district court would not have original subject matter jurisdiction.” 733 F.2d at 1023. The same analysis applies to the bankruptcy removal statute. Like Section 1441(c), Section 1452(a) permits the removal of certain actions that cannot be removed under Section 1441(a) — namely, with two exceptions, all civil actions that are “related to” to a bankruptcy case. The statute invites no distinction between, on the one hand, those “related to” actions over which a federal district court lacks original jurisdiction and, on the other hand, those “related to” actions over which a federal district court has original jurisdiction but lacks removal jurisdiction based on an Act of Congress.
Were we to read that distinction into the text of Section 1452(a), we would essentially be pasting the introductory clause of Section 1441(a) — “[ejxcept as otherwise expressly provided by Act of Congress”— into Section 1452(a). In light of the principles articulated in Gonsalves, we see no need to do such violence to the statutory scheme. Gonsalves teaches that when an anti-removal provision such as Section 22(a) is invoked, the threshold question is whether removal is being effectuated by way of the general removal statute, 28 U.S.C. § 1441(a), or by way of a separate removal provision that “grants additional removal jurisdiction in a class of cases which would not otherwise be removable under the prior grant of authority.” Id. at 1022 (quoting U.S. Industries, Inc. v. Gregg, 348 F.Supp. 1004, 1015 (D.Del.1972) (emphasis added)). If removal is being effectuated through a provision that confers additional removal jurisdiction, and that provision contains no exception for nonremovable federal claims, the provision should be given full effect. See id. at 1022-23. Based on these principles, we indicated in Gonsalves that Section 1441(c) confers removal jurisdiction over all “otherwise non-removable” claims that are joined with removable claims, including claims grounded on federal law that may not be removed to federal court. Here, we apply the same principles to Section 1452(a), and hold that, with two enumerated exceptions, Section 1452(a) confers re *108 moval jurisdiction over all claims “related to” a bankruptcy case.
Conclusion
We decline to interpret the key introductory clause in Section 1441(a) as sur-plusage, or to create a distinction between two classes of “related to” claims that is wholly absent from the bankruptcy removal statute. Accordingly, we hold that generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come within the purview of 28 U.S.C. § 1452(a), which confers federal jurisdiction over claims that are related to a bankruptcy case. In so holding, we do not decide whether the particular claims at issue in this case come within the purview of 28 U.S.C. § 1452(a). Instead, we simply affirm the District Court’s decision to assert jurisdiction over the Bondholders’ individual Securities Act claims despite the conflict between Section 22(a) and Section 1452(a).

. That section provides in relevant part that, with one exception, "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a).

. That section provides:
A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit’s police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
28 U.S.C. § 1452(a). Section 1334, in turn, provides:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
28 U.S.C. § 1334(b) (emphasis added).

.WorldCom sought Chapter 11 protection in the Southern District of New York on July 21, 2002. Once WorldCom filed for bankruptcy, the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, took effect, preventing litigation against WorldCom from going forward. Thus, the actions have proceeded against the numerous defendants other than WorldCom.

. The names of the defendants are listed in the District Court’s opinion. See Remand Opinion, 293 B.R. at 313 nn. 2-6.

. Separate class actions alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA”), 29 U.S.C. § 1001 et seq., have also been consolidated in the Southern District under the caption In re WorldCom, Inc. ERISA Litigation. These actions are not relevant to this appeal.

. Notably, on September 4, 2002 and March 5, 2003, the United States Bankruptcy Court for the Southern District of New York approved the payment of fees by the WorldCom estate to counsel for the Directors. The estate made payments of fees to counsel in accordance with the Bankruptcy Court’s procedures.

. In relevant part, § 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order ....
28 U.S.C. § 1292(b).

. In a separate petition, the Bondholders asked this Court to issue a writ of mandamus directing the District Court to vacate its May 28, 2003 order consolidating their actions with a class action for pretrial purposes and vesting authority for conducting discovery and motion practice in the lead class-action plaintiff. That petition was denied in a brief summary order along with the petition seeking remand. See In re California Public, 79 Fed.Appx. 478, 479 (2d Cir.2003).

. At oral argument, however, counsel for the Underwriters conceded that his clients would not be prejudiced by an order extending the opt-out date.

. Because we agree with the District Court that the question presented is not a controlling question of law, we need not review the District Court's determination that "the Inter-venors have not shown that there is a substantial ground for a difference of opinion that their actions are 'related to’ the WorldCom bankruptcy under the standard applied in this Circuit.” In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 22953644, at *7 (S.D.N.Y. Dec. 16, 2003).

. That section provided: "The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.” 28 U.S.C. § 1471(c) (repealed). A plurality of the Supreme Court concluded that § 1471(c) was unconstitutional because it impermissibly removed "essential attributes of the judicial power” from Article III judges. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

. As discussed further below, see note 17, post, the current version of 28 U.S.C. § 1441(c) only permits removal of generally nonremovable claims when they are joined with a claim that falls within the federal question jurisdiction conferred by 28 U.S.C. § 1331. Thus, a claim that meets the requirements for diversity jurisdiction such as the maintenance and cure claim in Gonsalves could no longer satisfy Section 1441(c).

. In addition, two district judges in the Central District of California have substantially adopted the reasoning of Judge Cote or Judge Lynch, and refused to remand stand-alone Securities Act claims to state court. See Carpenters Pension Trust for S. Cal. v. Ebbers, 299 B.R. 610, 615 (C.D.Cal.2003) (relying principally on Judge Lynch’s reasoning in Global Crossing); Pacific Life Ins. Co. v. J.P. Morgan Chase & Co., No. SA CV 03-813GLT (ANX), 2003 WL 22025158, at *2 (C.D. Cal. June 30, 2003) (relying, inter alia, on Judge Cote's March 3, 2003 opinion).

. The venue provision of the National Bank Act was enacted in 1878. Radzanower, 426 U.S. at 150, 96 S.Ct. 1989.

. The amendment of Section 22(a) in 1998 is also of diminished significance in light of the fact that Section 1452(a) was enacted well after the original version of Section 22(a). See Bulova Watch Co. v. United States, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 ("We do not believe that [28 U.S.C.] § 2411(a) can fairly be regarded as a later enactment than § 3771(e) [of the Internal Revenue Code of 1939], for at the time § 3771(e) was enacted, in 1942, a predecessor provision of § 2411(a) had long been on the books.”).

. Some commentators have called this principle the "dog didn’t bark” canon, or "the presumption that a prior legal rule should be retained if no one in legislative deliberations even mentioned the rule or discussed any changes in the rule.” William N. Eskridge, Jr. & Philip P. Frickey, Foreword: Law as Equilibrium, 108 Harv. L.Rev. 26, 101 (1994) (citing Chisom v. Roemer, 501 U.S. 380, 396 & n. 23, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991)).

. This version of the provision is narrower than its predecessor. Under the pre-1990 version of the provision, which was in force when our Court decided Gonsalves, see, Sec. III. A, ante, "a separate and independent claim or cause of action” could be removed as long as it was joined with any claim or action that could be removed "if sued upon alone.” 16 James William Moore et al., Moore’s Fed. Prac. § 107 App.09[l] (3d ed.2002). By contrast, under the amended version of the statute, "a separate and independent claim or cause of action” may be removed only if it is joined with a claim that falls "within the [federal question] jurisdiction conferred by [28 U.S.C. § 1331].” See id. *106 Thus, unlike when Gonsalves was decided, the existence of a claim that meets the requirements for diversity jurisdiction is no longer sufficient to implicate Section 1441(c). Instead, Section 1441(c) may only be invoked when a generally nonremovable claim is joined with a federal claim that is removable under Section 1441(a). See H.R.Rep. No. 734, 101st Cong., 2d Sess. § 109 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6869 (explaining that “removal of [federal question] cases is possible under Sec. 1441(a)" and that the amended version of Section 1441(c) is meant to "establish a basis of removal that would avoid the need to decide whether there is pendant [sic] jurisdiction").

. The relevant portion of Gonsalves is dicta because our Court in that case did not have to determine whether 28 U.S.C. § 1441(c) trumped the Jones Act’s nonremoval provision in order to conclude that the plaintiff's maintenance and cure claim was not suffi *107 ciently "separate and independent” of the Jones Act claim to satisfy the requirements of Section 1441(c). See Black's Law Dictionary 1100 (7th ed.1999) (defining "obiter dictum” as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)”); cf. id. at 737 (defining "holding” as "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision”).